THE MAYTAG CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25399. Promulgated September 4, 1929.

*Jesse I. Miller, Esq.*, for the petitioner.
*Harry LeRoy Jones, Esq.*, for the respondent.

OPINION.

ARUNDELL: Under the provisions of section 204 (b) of the Revenue Act of 1921, a taxpayer sustaining a net business loss for any taxable year beginning after December 31, 1920, is permitted to deduct such loss from his net income for the succeeding taxable year. There is no dispute about the amount or character of the loss sustained. The question to be decided is whether the Maytag Co. of Maine is *the taxpayer* within the meaning of section 204, so as to be entitled to deduct from 1922 income the net loss sustained in 1921 by its predecessor, the Maytag Co. of Iowa.

So stated, the proposition has a paradoxical sound, for of course the Maine company is not the Iowa company, and it is conceded by

the petitioner that upon the organization of the Maine company a new *legal* entity was created. The question argued is whether, despite the creation of a new *legal* entity, a new *taxable* entity came into existence.

There are cases in which a proper regard for " matters of substance and not mere form " in construing taxing statutes, has impelled courts to disregard a change of legal entities. See *Weiss* v. *Stearn*, 265 U. S. 242; *Western Maryland Railway Co.* v. *Commissioner*, — Fed. (2d) —. On the other hand, it has been found necessary in many cases in order to give effect to tax laws, to regard a change in corporate identity as something more than a matter of form, as in *Marr* v. *United States*, 268 U. S. 536, where a new corporation, organized to continue the business of the old, was created under the laws of another State and with a different capital structure. *Weiss* v. *Stearn* and *Marr* v. *United States* are distinguished in the latter case in these words:

In *Weiss* v. *Stearn* a new corporation had, in fact, been organized to take over the assets and business of the old. Techn'cally there was a new entity; but the corporate entity was deemed to have been substantially maintained because the new corporation was organized under the laws of the same state, with presumably the same powers as the old. There was also no change in the character of securities issued.

\*     \*     \*     \*     \*     \*     \*

In the case at bar, the new corporation is essentially different from the old. A corporation organized under the laws of Delaware does not have the same rights and powers as one organized under the laws of New Jersey. Because of these inherent differences in rights and powers, both the preferred and common stock of the old corporation is an essentially different thing from stock of the same general kind in the new. But there are also adventitious differences, substantial in character. A 6 per cent, nonvoting preferred stock is an essentially different thing from a 7 per cent, voting preferred stock. A common stock subject to the priority of $20,000,000 preferred and a $1,200,000 annual dividend charge is an essentially different thing from a common stock subject to $15,000,000 preferred and a $1,050,000 annual dividend charge.

So here we have corporations organized under the laws of different States and presumably having different rights and powers, and, while both had the same amount of preferred stock, there was a change in common stock from 12,201.5 shares of $100 par to 80,000 shares of no par. These changes are matters of substance and not to be lightly disregarded. See *Edward A. Langenbach*, 2 B. T. A. 777, 784. In our opinion they are conclusive against the claim that the new corporation is the same taxable entity as the old. Cf. *White House Milk Co.*, 2 B. T. A. 860, and *Sweets Co. of America*, 12 B. T. A. 1285.

It is worthy of note in passing that the petitioner's views, if accepted, would have far-reaching effects on other tax questions. The result would be that many corporations upon reorganization would

be deprived of the benefits arising from a revaluation of assets acquired from predecessors. For example, it is held that the basis for depreciation of assets acquired for stock is the fair market value at the time of acquisition, regardless of cost to the predecessor. See *Monarch Electric & Wire Co.*, 12 B. T. A. 158. And for invested capital purposes, except as limited by section 208 of the 1917 Act and section 331 of the 1918 and 1921 Acts, assets may be revalued by the new corporation and included at their actual value without regard to the amount allowable to the predecessor. *Regal Shoe Co.*, 1 B. T. A. 896; *Rosenbaum Brothers, Inc.*, 11 B. T. A. 736.

*Judgment will be entered for the respondent.*